## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **CAPITOL MEDICAL CENTER, LLC,** |
| **Plaintiff,** |
| **v.** |
| **AMERIGROUP MARYLAND, INC.,** |
| **Defendant.** |

**Civil Action 09-01084  (HHK)**

### MEMORANDUM OPINION

Capitol Medical Center, doing business as United Medical Center ("Capitol"), brings this action against Amerigroup Maryland, Inc. ("Amerigroup"), seeking to recover for alleged breach of contract. The case arises from Amerigroup's payment to the former owner of a hospital for services provided by Capitol, the new owner of the hospital. Before the Court is Amerigroup's motion to dismiss Capitol's First Amended Complaint [#11]. The motion seeks dismissal of the complaint based on Capitol's asserted failure to join a necessary party or, in the alternative, partial dismissal for Capitol's failure to state a claim upon which relief can be granted. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion should be granted.

### I. BACKGROUND

Amerigroup is a managed care organization that contracts with health care providers to offer medical services to patients who are members of Amerigroup's health plans. Compl. ¶ 2.[1]

---

[1]     All citations herein to Capitol Medical Center's complaint refer to the First Amended Complaint.

In 2001, Amerigroup entered into such a contract ("Amerigroup Agreement") with the Greater Southeast Community Hospital ("Hospital"), a hospital in Washington, D.C.  *Id.* ¶¶ 1, 11.  That agreement, amended in 2004, obligated Amerigroup to pay for covered medical services provided to Amerigroup's plan members at the Hospital.  *Id.* ¶ 11-14.

In August 2007, Capitol and other entities purchased the Hospital from Envision Hospital Corporation ("Envision").  *Id.* ¶ 17.[2]  Capitol alleges that the Amerigroup Agreement "was among the assets purchased."  *Id.* ¶ 18.

The Amerigroup Agreement states that "[t]his Agreement may be assigned by Hospital," but it requires "the prior written consent" of the Maryland Department of Health and Mental Hygiene ("MDHMH") and of Amerigroup.   Def.'s Mot. to Dismiss, Ex. A at 12.  Capitol's complaint alleges that "[u]pon information and belief, [MDHMH] consented to and/or ratified the assignment of the Amerigroup Agreement to [Capitol]."  Compl. ¶ 18.

In December 2007, Capitol notified Amerigroup in writing that when Amerigroup's plan members received services at the Hospital, Amerigroup should send payments to Capitol.  *Id.* ¶ 19.  Amerigroup did not respond to this letter or other communications, including emails, regarding the change in ownership of the Hospital.  *Id.* ¶¶ 20, 22.  From December 2007 to July 2008, Amerigroup processed requests for reimbursement for services from Capitol but sent payments to Envision.  *Id.* ¶¶ 21-22.  These payments totaled $609,463.55.  *Id.* ¶ 27.  From July

---

[2]      Greater Southeast Community Hospital Corporation I, the entity with which Amerigroup made the Amerigroup Agreement, Def.'s Mot. to Dismiss, Ex. A at 1, was also party to the purchase agreement as a seller.  Compl. ¶ 17.  Envision owned 95% of the outstanding capital stock of the Southeast Community Hospital Corporation I at the time of the sale.  *Id.*

2008 until Amerigroup terminated the Amerigroup Agreement effective January 31, 2009, Amerigroup made payments to Capitol.  *Id.* ¶ 26.

Envision filed for bankruptcy in the United States Bankruptcy Court for the District of Arizona in May 2009.  Def.'s Mot. to Dismiss, Ex. C, Attach. 1 (PACER docket for Bankruptcy Pet. No. 09-9240).

Capitol alleges that Amerigroup's failure to pay Capitol from December 2007 to July 2008 constitutes a breach of the Amerigroup Agreement as well as a violation of D.C. Code § 31-3132[3] (Count I).  Compl. ¶¶ 28-33.  Capitol also alleges that Amerigroup breached an implied contract by accepting the benefits Capitol provided but not paying for them (Count II).  *Id.* ¶¶ 34-37.

## II. ANALYSIS

### A. Count I of Capitol's Complaint is Dismissed for Failure to State a Claim Upon Which Relief May Be Granted.

Amerigroup moves to dismiss Capitol's complaint based on Capitol's failure to join Envision as a party to this action or, in the alternative, to dismiss Count I under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Amerigroup Agreement was not assigned to Capitol.  The Court addresses Amerigroup's alternative argument first.[4]

---

[3]     D.C. Code § 31-3132 provides that "[f]or covered services rendered to its members, a health insurer shall reimburse any person entitled to reimbursement under the health benefits plan within 30 days after the receipt" of a proper claim.  D.C. Code § 31-3132.

[4]     At the outset, the Court notes that this case is before it on the basis of diversity jurisdiction.  Under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny, "federal courts sitting in diversity apply state substantive law and federal procedural law."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) (holding that for purposes of applying the *Erie* doctrine, D.C. law qualifies as state law (citing *Lee v. Flintkote Co.*, 593 F.2d

3

1.	**Rule 12(b)(6) dismissal**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint, or any portion of it, for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  A court considering such a motion to dismiss must assume that all factual allegations are true, even if they are doubtful.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief,'" however, "requires more than labels and conclusions . . . .  Factual allegations must be enough to raise a right of relief above the speculative level."  *Id.* (internal citations omitted).

2.	**Capitol has not alleged that it received written consent to assignment of the Amerigroup Agreement.**

Count I of Capitol's complaint alleges breach of contract and thus requires that Capitol and Amerigroup were parties to a contract.  Capitol asserts it has a valid claim for breach of contract because it is party to the Amerigroup Agreement as Envision's assignee.

Amerigroup argues that Count I should be dismissed because Capitol cannot show that assignment of the Amerigroup Agreement occurred.  Amerigroup asserts that the contract's assignment provision requires written consent from Amerigroup and MDHMH.[5]  Capitol rejoins

------

1275, 1279 n.14 (D.C. Cir. 1979))).  Therefore, the Court will apply D.C. law but adhere to the Federal Rules of Civil Procedure.  *See Gasperini*, 518 U.S. at 427 & n.7; *Novak*, 452 F.3d at 907.

[5]	Amerigroup has attached the Amerigroup Agreement to its motion to dismiss.  Because a court may consider an exhibit referenced in the complaint without converting a 12(b)(6) motion to a motion for summary judgment, *Clark v. Feder Semo & Bard, P.C.*, 634 F. Supp. 2d 99, 106 n.3 (D.D.C. 2009), the Court may take into account the language of the agreement for purposes of resolving this request for dismissal.

that Amerigroup ratified, and MDHMH "consented to and/or ratified," the assignment, but Amerigroup argues these allegations are insufficient to establish a right to payment.[6]

Capitol offers three responses to this argument.  First, Capitol notes that its complaint alleges that Amerigroup's failure to provide written consent to the assignment of the Amerigroup Agreement was "unlawful and improper."  Pl.'s Opp'n to Def.'s Mot. to Dismiss at 12 ("Pl.'s Opp'n").  Capitol contends that the Court must take this allegation as true and therefore should conclude that Amerigroup "cannot escape liability by its own wrongful act."  *Id.*  Next, Capitol argues that, under contract law, a party cannot prevent a condition from occurring—as Amerigroup allegedly did by failing to confirm assignment of the Amerigroup Agreement—as an excuse not to perform.  Finally, Capitol asserts that its complaint alleges that Amerigroup ratified the assignment, as evidenced by Amerigroup's payments to Capitol pursuant to the Amerigroup Agreement beginning in July 2008.

None of Capitol's arguments have merit because they cannot overcome the plain language of the contract.  Section 7.4 of the Amerigroup Agreement states that "[t]his Agreement may be assigned by Hospital with the prior *written consent* of MDHMH and AMERIGROUP."  Def.'s Mot. to Dismiss, Ex. A at 12 (emphasis added).  Capitol makes no allegation that either Amerigroup or MDHMH provided written consent to the assignment of the contract to Capitol.  Capitol's arguments may support Count II of the complaint, the implied contract theory, but the fact remains that without written consent, by the contract's explicit and unambiguous terms, no

---

[6]      As to the allegation that MDHMH consented to the assignment, Amerigroup argues that Capitol relies only on "information and belief" without pleading, as Amerigroup asserts is required, that information supporting the allegation was within Amerigroup's sole possession.  The Court need not address this argument because it grants dismissal of Count I on other grounds.

assignment occurred.  Capitol is not a party to the Amerigroup Agreement.  Therefore, the Court

concludes that Count I of the complaint must be dismissed.

**B.      Count II of Capitol's Complaint is Dismissed Because the Court Declines To Proceed Without a Necessary Party Who Cannot Be Joined.**

Amerigroup seeks dismissal of Capitol's complaint under Federal Rule of Civil

Procedure 12(b)(7), asserting that Envision is a necessary party under Federal Rule of Civil

Procedure 19(a) and, because Envision cannot be joined, dismissal is appropriate under Rule

19(b).  The Court evaluates the parties' arguments regarding this issue in light of its conclusion

that assignment of the Amerigroup Agreement to Capitol has not occurred.

**1.      Rule 12(b)(7) dismissal**

Rule 12(b)(7) permits dismissal of a complaint for failure to join a necessary party under

Rule 19.  Rule 19 "establishes a two-step procedure for determining whether an action must be

dismissed because of the absence of a party needed for a just adjudication."  *Cherokee Nation of*

*Okla. v. Babbitt*, 117 F.3d 1489, 1495-96 (D.C. Cir. 1997).  First, Rule 19(a) requires that a court

order joinder of any party where without that party, (1) "the court cannot accord complete relief

among existing parties" or (2) proceeding would either (i) "impair or impede the [party]'s ability

to protect [its] interest" in the action or (ii) "leave an existing party subject to a substantial risk of

incurring double, multiple, or otherwise inconsistent obligations because of the [missing party's]

interest" in the action.  Fed. R. Civ. P. 19(a)(1).

Next, Rule 19(b) provides that if a party deemed necessary under Rule 19(a) cannot be

joined, "the court must determine whether, in equity and good conscience, the action should

proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  The Rule

6

lists factors to consider in making such a determination: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; (2) "the extent to which any prejudice could be lessened or avoided by . . . protective provisions in the judgment[,] shaping the relief[,] or other measures"; (3) "whether a judgment rendered in the [party]'s absence would be adequate"; and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id.* A court has "substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute." *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*, 699 F.2d 1274, 1277 (D.C. Cir. 1983) (quoting 7 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1604 at 45-46 (1972)) (internal quotation mark omitted). Consideration of joinder under Rule 19 "can be complex, and determinations are case specific." *Republic of Philippines v. Pimentel*, 128 S. Ct. 2180, 2188 (2008).

> **2.      Envision is a necessary party under Rule 19(a).**

Amerigroup argues that Envision is a necessary party. Amerigroup asserts that one of the purposes of Rule 19 is avoiding multiple litigation, and because Envision "has the money [Capitol] wants," Envision should be joined. If Envision is not joined and Capitol prevails in this case, Amerigroup notes, Amerigroup will have a cause of action against Envision and would bear the cost of filing a new suit. Amerigroup also describes the issue raised in this case as "who, as between Envision and Capitol, is the owner of the funds paid by Amerigroup to Greater Southeast/Envision," reasoning that, per the terms of the purchase agreement between Capitol

and Envision, Envision should have held misdirected payments in trust for Capitol.  Def.'s Mot. to Dismiss at 9.

Capitol responds that Envision is not a necessary party.  Capitol asserts that if Capitol is the assignee of the Amerigroup Agreement, it possesses the rights it seeks to assert against Amerigroup and Envision need not be joined.  Capitol argues that whether Amerigroup can bring a separate action to recover from Envision, or whether Capitol might also have a claim against Envision, is not relevant to this action.  Capitol relies heavily on *Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43 (D.D.C. 2003), in which the court held that a health insurance company was not a necessary party to a suit for recovery from a patient where the plaintiff alleged it was the assignee of the company's right to collect such recovery.  *Id.* at 50-51.

The Court concludes that Envision is a necessary party to this action.  The Amerigroup Agreement was not assigned to Capitol.[7]  As a result, Amerigroup was party to a contract requiring that it pay Envision for services provided at the Hospital at a time when Capitol was providing those services.  Therefore, Amerigroup is at "substantial risk of incurring double . . . obligations"—one to Envision and the other to Capitol—as contemplated by Rule 19(a).  Fed. R. Civ. P. 19(a)(1)(B).  Furthermore, the contract between Capitol and Envision for sale of the Hospital may have required that Envision deliver to Capitol the funds it received from

---

[7]     That Capitol is not Envision's assignee renders *Primax* distinguishable.  Unlike the plaintiff in that case, Capitol has not assumed the rights of the absent party; consequently, Capitol is not in privity with Envision for this purpose and this action would not preclude Envision from asserting rights against the defendant in regard to the issues raised here.  *Cf. Primax*, 360 F. Supp. 2d at 51 (relying on the significance of the assignment of rights to the plaintiff in conducting a Rule 19 analysis).

Amerigroup after the sale was complete.[8]  In the absence of Envision, the Court would be unable

to provide "complete relief among existing parties" if Envision, rather than Amerigroup, owes

the money in question to Capitol.  Fed. R. Civ. P. 19(a)(1)(A).

### 3.      This action shall be dismissed pursuant to Rule 19(b).

The parties agree that Envision cannot be joined to this action because it is in engaged in

a bankruptcy proceeding.  Joinder in such cases is prohibited by statute.  *See* 11 U.S.C. § 362(a)

("[A bankruptcy action] operates as a stay, applicable to all entities, of . . . the commencement

. . . of a judicial, administrative, or other action or proceeding against the debtor that was or could

have been commenced before the commencement of the case under this title.").

Amerigroup argues that because Envision cannot be joined, the Court should dismiss

Capitol's complaint based on the Rule 19(b) factors.  Amerigroup asserts that a "judgment

against Amerigroup will subject Amerigroup to paying twice for the same services."  Def.'s Mot.

to Dismiss at 11.  Furthermore, Amerigroup alleges that Capitol waited to file this action until

after Envision had filed for bankruptcy in order to prevent Amerigroup from impleading

Envision.  As to the second Rule 19(b) factor, whether provisions in the judgment or the form of

relief could lessen any prejudice identified, Amerigroup argues that the Court cannot design a

---

[8]      Amerigroup has attached as Exhibit B to its motion the contract between Capitol and Envision for sale of the hospital, and the Court may consider it.  *See Three Affiliated Tribes of the Fort Berthold Indian Reservation v. United States*, 637 F. Supp. 2d 25, 29 (D.D.C. 2009) ("Courts may consider materials outside the pleadings in resolving a motion to dismiss under Rule 12(b)(7)."  (citing *Anderson v. Hall*, 755 F. Supp. 2, 5 (D.D.C. 1991))).  The contract provides that "[a]ny asset or any liability . . . that is a Purchased Asset or an Assumed Obligation . . . which comes into the possession . . . of [Envision] . . . shall within five (5) business days following receipt be transferred . . . by [Envision] . . . to [Capitol]" and that until such transfer, "[Envision] shall hold such asset in trust for the benefit of [Capitol]."  Def.'s Mot. to Dismiss, Ex. B at 58.

remedy that would avoid this prejudice to it.  Regarding the third factor, adequacy of the judgment, Amerigroup argues that "proceeding without Envision is contrary to judicial economy, as well as the interest of the parties and the public, as it will certainly result in multiple litigation" because Amerigroup would be forced to join Envision's bankruptcy proceeding in order to recover from Envision.  *Id.* at 13.  Finally, Amerigroup argues that because Capitol can proceed against Envision in bankruptcy court, it would still have an adequate remedy were the Court to dismiss this action.

In response, Capitol argues that the Rule 19(b) factors favor permitting the action to proceed.  First, Capitol asserts that the absence of Envision will not prejudice the parties.  In support of this argument and the position that the Court need not fashion a remedy to protect Amerigroup, Capitol contends that Amerigroup can recover from Envision in Envision's bankruptcy proceedings.  Capitol further argues that because Amerigroup ratified the assignment of its contract and nonetheless sent payments to Envision, Amerigroup "assumed the risk that Envision might not return the funds."  Pl.'s Opp'n at 10.  As to the third Rule 19(b) factor, Capitol argues that judicial economy is not relevant, noting instead that "complete relief can be afforded to [Capitol] in the present suit."  *Id.* at 11.  Finally, Capitol argues that requiring Capitol, rather than Amerigroup, to file for relief in Envision's bankruptcy proceeding does not provide an adequate remedy to Capitol.

The Court concludes that it cannot "in equity and good conscience" allow Capitol to proceed in this action against Amerigroup without Envision.  As explained above, a judgment in this action might prejudice Amerigroup because Amerigroup could be required to compensate

Capitol for services for which it has already paid.[9]  Furthermore, no form of relief or provision in

the judgment could prevent this prejudice.  Without the presence of Envision, the Court cannot

issue any order that is binding on Envision and so cannot ensure that Amerigroup would recoup

its initial payment.  The Court notes that Capitol has not suggested any shaping of the relief that

would address Amerigroup's concerns, instead arguing only that the concerns are not valid.  As

to the third factor, any judgment in this action would be inadequate because it would not require

that Envision return the funds at issue to Amerigroup or redirect them to Capitol.  Capitol's

argument to the contrary misconstrues the third Rule 19(b) factor, which does not ask whether

the plaintiff could receive what from its perspective is complete relief but instead "refer[s] to this

public stake in settling disputes by wholes, whenever possible."  *Pimentel*, 128 S. Ct. at 2193

(quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968)); *see*

*also Provident Tradesmens Bank*, 390 U.S. at 111 (noting that "clearly the plaintiff, who

[her]self chose both the forum and the parties defendant, will not be heard to complain about the

sufficiency of the relief obtainable against them").  Finally, the bankruptcy proceeding is an

---

[9]      Evaluation of the first Rule 19(b) factor "overlaps considerably with the Rule
19(a) analysis."  *Gardiner v. Virgin Islands Water & Power Auth.*, 145 F.3d 635, 641 n.4 (3rd
Cir. 1998) (quoting WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1608 at 91);
*see also Dawavaendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150,
1162 (9th Cir. 2002) ("The prejudice to the [absent party] stems from the same impairment of
legal interests that makes the [party] a necessary party under Rule 19(a)(2)(i)."  (citing *Clinton v.
Babbitt*, 180 F.3d 1081, 1090 (9th Cir. 1999))).

alternative forum in which all interested parties can proceed after dismissal of this case.[10]   Taking

all of these considerations into account, the Court concludes that this action should be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Amerigroup's motion to dismiss

[#11] shall be granted.  An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge

---

[10]   The parties informed the Court during oral argument that, given the realities of Envision's finances, they have essentially no hope of recovery from Envision in the bankruptcy proceeding.  Although this fact limits the Court's reliance on the fourth factor in reaching its conclusion, it does not preclude dismissal.  The D.C. Circuit has instructed that the fourth factor "does not mean that an action should proceed solely because the plaintiff otherwise would not have an adequate remedy, as this would be a misconstruction of the rule and would contravene the established doctrine of indispensability."  *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 777 (D.C. Cir. 1986) (quoting 3A MOORE'S FEDERAL PRACTICE ¶ 19.07-2 at 19-153 (1984)).